# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:15-cv-393-GCM
# (3:12-cr-239-GCM-DCK-4)

| | |
|---|---|
| GLYNN HUBBARD, | ) |
| Petitioner, | ) |
| vs. | ) ORDER |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

**I.  BACKGROUND**

Pro se Petitioner Glynn Hubbard was one of twenty-three people named in a superseding indictment as being part of a $75 million criminal organization that was involved in investment and securities fraud, bank and mortgage fraud, wire fraud, and the distribution of illegal drugs in Charlotte and Waxhaw, North Carolina. (Crim. Case No. 3:12-cr-239-GCM-DCK-4, Doc. No. 158: Superseding Indictment). Petitioner served as a promoter of the organization's mortgage fraud activities. See (Id., Doc. No. 370: Factual Basis). He was charged with racketeering conspiracy in violation of 18 U.S.C. § 1962(d), including acts constituting securities fraud, bank fraud, wire fraud, money laundering conspiracy, and possession with intent to distribute illegal drugs (Count One); mortgage fraud, and aiding and abetting such fraud, in violation of 18 U.S.C. §§ 1344, 2 (Count Three); and money laundering conspiracy involving promotion and concealment money laundering under 18 U.S.C. § 1956(a)(1)(A)(i), (B)(i) in violation of §

1

1956(h) (Count Five).  (Id., Doc. No. 158).

On October 3, 2013, twelve days before his trial was set to begin, Petitioner pleaded guilty to Count One and admitted to "the predicate acts of bank fraud and money laundering conspiracy."  (Id., Doc. No. 363 at ¶ 1: Plea Agreement; Doc. No. 371: Acceptance and Entry of Guilty Plea).  In exchange, the Government agreed to dismiss the remaining counts against him.  (Id., Doc. No. 363 at ¶ 2).  As part of the plea agreement, Petitioner agreed that he understood that every provision was a material term of the plea agreement and that his failure to comply with any provision of the agreement would relieve the Government of its obligations under the plea agreement.  (Id. at ¶ 3).  Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the parties jointly recommended to the Court that the amount of loss was over $1,000,00 but less than $2,500,000; that the base offense level for the underlying racketeering activity was 25, based on seven points under U.S.S.G. § 2B1.1(a)(1) (offenses involving fraud), sixteen points under U.S.S.G. § 2B1.1(b)(1)(I) (amount of loss), and two points under U.S.S.G. § 2S1.1(b)(2)(B) (money laundering).  (Id. at ¶ 7).  The Government agreed that Petitioner's guilty plea was timely under § 3E1.1(b).  (Id.).  The parties also agreed that they would make these recommendations as to the adjusted offense level and would "recommend no other enhancements or reductions to the Court."  (Id. at ¶ 7(e)).  Petitioner agreed to waive his right to challenge his conviction and sentence on direct appeal or in any post-conviction proceeding, with the exception of claims of ineffective assistance of counsel or prosecutorial misconduct.  (Id. at ¶¶ 18-19).

The plea agreement also provided that Petitioner agreed to cooperate, only if requested to do so by the United States, and that "[n]othing in this agreement places any obligation on the United States to seek the defendant's cooperation or assistance."  (Id. at ¶¶ 21; 23).

Additionally, the Government maintained the "sole discretion" to determine whether such assistance was substantial and whether to make a motion to reduce Petitioner's sentence. (Id. at ¶ 23). Petitioner agreed that he understood that if such a motion was made, it would not be "binding on the District Court." (Id.). At the plea hearing, Petitioner agreed that he understood the terms of the plea agreement. (Id., Doc. No. 371).

While on pre-trial release, Petitioner admitted to violating the terms of pre-trial release by consuming an excessive amount of alcohol and missing his curfew. (Id., Doc. No. 323: Order of Detention). The Court ordered his detention, noting that Petitioner was less than truthful about the circumstances leading to these violations. (Id.).

A probation officer prepared a presentence report (PSR), recommending a base offense level of 23, applying U.S.S.G. § 2E1.1 (directing use of the underlying racketeering activity), § 2S1.1 (money laundering directing use of the offense level for the offense from which the laundered funds were derived), and § 2B1.1(a)(1), (b)(1)(I) (providing for a base offense level of seven for offenses involving fraud and a sixteen-level enhancement for loss of more than $1,000,00, but less than $2,500,000). (Id., Doc. No. 654 at ¶ 16: PSR). Applying the two-level specific offense characteristic under § 2S1.1(b)(2)(B), because the offense involved a conviction under § 1956, the adjusted offense level was 25. (Id. at ¶¶ 17; 21). Allowing a three-level reduction for acceptance of responsibility, the total offense level was calculated as 22. (Id. at ¶¶ 23-25). Given Petitioner's criminal history category of I, the advisory guidelines range was 41-51 months of imprisonment. (Id. at ¶¶ 40-41; 67).

Petitioner did not object to the PSR. Instead, he sought a downward variance to a year and a day of imprisonment, contending that his "naivety" and "fast talking fraudsters" led to his offense conduct. (Id., Doc. No. 895 at 5; 11: Def.'s Sent. Mem.). He asserted that he had a very

limited role in the offense and argued that "low hanging fruit often times has little opportunity to substantially assist and consequently fails to reap the benefit that leaders or organizers receive by their cooperation." (Id. at 13).

The Government sought a 42-month sentence, in light of the fact that Petitioner had received almost a quarter of a million dollars in kickbacks "transferred to his sham corporation for fraudulent transactions in which he played no legitimate rule" and because there was evidence that Petitioner had attempted to engage in additional mortgage fraud transactions. (Id., Doc. No. 866 at 7-8: Gov't Sent. Mem.). The Government noted that, to the extent that Petitioner's role was more limited, this was reflected in the lower loss amounts for which he was responsible, as well as his not receiving any adjustments for his role in the offense. (Id. at 7).

At sentencing, Petitioner called two character witnesses and again argued for a variance, asserting that he had only been involved with two transactions and consequently was subject to a disproportionate sentence based on his role in the conspiracy. (Id., Doc. No. 977 at 5-17: Sent. Tr.). He asserted that he had struggled to understand why what he did was illegal, since "he believed in many respects that he was operating in good faith," that this was commonly done in the industry, and that he had simply repeated what others had told him. (Id. at 13; 15-16). He contended that a downward variance would avoid a sentencing disparity between those who played a greater role and could provide substantial assistance to the Government, and those, such as himself, who played a minor role, such that he did not have useful information to provide. (Id. at 16-17). In his sentencing colloquy, Petitioner himself stated that he had not been interviewed and that he thought that a lot of the things that people had said against him were simply statements by people who were just "trying to save themselves." (Id. at 21).

The Government noted that Petitioner had been served with a target letter and could have

4

cooperated at that time, but that he chose not to and hung up when the agent contacted him after the letter had been emailed to him. (Id. at 24). Additionally, Petitioner waited until the eve of trial to plead guilty. (Id.). Thus, the Government argued that Petitioner's assertion that he had not had an opportunity to cooperate and should, therefore, receive a lower sentence was incorrect. (Id. at 24-25). The Government stated that it believed that Petitioner had useful information, but that he elected not to provide it to the Government. (Id. at 25).

The Court found that Petitioner's involvement was low, that he had made efforts to help others through non-profit work, and that specific deterrence was unnecessary. (Id. at 36-37). The Court stated that in order to impose a just sentence and to avoid unwarranted sentencing disparities, it was varying downward to 36 months of imprisonment. (Id. at 37-38). The Court also commended defense counsel on the quality of the work he had done on behalf of his client. (Id. at 40).

Petitioner did not appeal, but he timely filed the present § 2255 motion in August 2015, in which he raises the following two claims of ineffective assistance of counsel: (1) counsel failed to object to the two-level enhancement under U.S.S.G. § 2S1.1(b)(2)(B); and (2) counsel prevented Petitioner from providing substantial assistance to the Government.[1]

**II.     STANDARD OF REVIEW**

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that

---

[1] Petitioner's trial counsel has declined to provide an affidavit, citing client confidentiality.

Petitioner's claims can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

**A. Petitioner's Claim of Ineffective Assistance of Counsel**

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To state a claim of ineffective assistance of counsel in the context of a guilty plea, a petitioner must satisfy a two-pronged test. Strickland v. Washington, 466 U.S. 668, 686-87 (1984). First, a petitioner must show that the representation he received fell below an objective standard of reasonableness. Id. at 688. The court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. For the second prong, a petitioner must show that he was prejudiced by the ineffective assistance by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Moreover, to establish prejudice based on ineffective assistance at sentencing, a petitioner must show that there is a reasonable probability that he would have received a more lenient sentence, but for counsel's deficient performance. Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999).

**A. Petitioner's claim of ineffective assistance of counsel based on counsel's failure to object to the adjustment for money laundering.**

Petitioner first argues that his attorney provided ineffective assistance by not objecting at sentencing to the two-level adjustment under U.S.S.G. § 2S1.1(b)(2)(B). (Doc. No. 1 at 16-20).

6

He contends that before the sentencing hearing he expressed concerns about this enhancement, and he was led to believe that his attorney would file an objection to it, but no objection was filed. (Id. at 17). Petitioner argues that the adjustment did not apply to him because he was never convicted of money laundering. (Id.). Petitioner relies on United States v. Rosse, 320 F.3d 170 (2d Cir. 2003), and Ruiz-Sanchez v. United States, No. 3:11-cv-826, 2013 WL 4805764 (E.D. Va. Sept. 9, 2013), to support his argument. (Id.). Petitioner argues that he was prejudiced because there is a reasonable probability that he would have received a different sentence had his counsel objected to the enhancement. (Id. at 17).

Petitioner has not established deficient performance because he agreed to application of the adjustment as part of his plea agreement. See (Id., Doc. No. 363 at ¶ 7). If his attorney had objected to the application of this adjustment at sentencing, he would have risked violating the plea agreement and relieving the Government of its obligations under the plea agreement, including the dismissal of the other charges against Petitioner, as well as the Government's recommendation regarding acceptance of responsibility. See United States v. Greene, 305 F. App'x 59 (4th Cir. 2008) (noting the Government's concession that presenting evidence to support an enhancement after agreeing to recommend an offense level pursuant to Rule 11(c)(1)(B) was a breach of the plea agreement). Counsel's conduct in acting in accordance with the plea agreement, which required recommending the adjustment, was objectively reasonable. See Strickland, 466 U.S. at 687-88.

Petitioner has also not shown that the application of U.S.S.G. § 2S1.1(b)(2)(B) was erroneous. Petitioner cites two, non-binding decisions—Rosse and Ruiz-Sanchez—to support his contention that the two-level adjustment under U.S.S.G. § 2S1.1(b)(2)(B) should not have applied, but neither Rosse nor Ruiz-Sanchez compels a finding of ineffective assistance of

7

counsel in this case. First, in Rosse, the court applied a money laundering provision that has since been amended and did not specifically address U.S.S.G. § 2E1.1 cmt. n.1, which provides that each racketeering activity underlying a RICO conviction should be treated as "a separate count of conviction" when determining the offense level applicable to the underlying racketeering activity. Thus, Rosse does not compel a finding that the two-level adjustment under U.S.S.G. § 2S1.1(b)(2)(B) should not have applied to Petitioner in this case.

Next, in Ruiz-Sanchez, the defendant pleaded guilty to racketeering conspiracy under § 1962(d). Ruiz-Sanchez, 2013 WL 4805764, at *1. The defendant's base offense level was calculated using the base offense level for conspiracy to possess, produce, and transfer false identification documents. Id. at *2. The offense level was increased by nine levels because the offense involved more than 100 documents, by two levels based on having an aggravated role in the offense, and by two levels for being convicted under § 1956. Id. The defendant filed a § 2255 motion, arguing that he had received ineffective assistance of counsel based on counsel's failure to object to the two-level adjustment for money laundering, since he had not actually been convicted under § 1956. Id. Although the court in Ruiz-Sanchez ultimately found that the adjustment should not have applied, the court held that counsel's failure to object to the adjustment was not deficient performance, stating that "application of the § 2S1.1(b)(2)(B) enhancement is not the kind of clear and indisputable error in Petitioner's PSR for which a failure to object is outside of the wide range of performance that is considered reasonable under Strickland . . . ." Id. at *5.

Here, unlike in Ruiz-Sanchez, Petitioner expressly agreed to the two-level adjustment as part of his plea agreement. Furthermore, application of the adjustment was proper under the Guidelines. This Court appropriately looked to money laundering, a predicate act that Petitioner

8

admitted to in his plea agreement, as the underlying racketeering activity and applied the offense level for money laundering, which included the specific offense characteristic under U.S.S.G. § 2S1.1(b)(2)(B). See U.S.S.G. § 2E1.1(a)(2); § 2S1.1; § 1B1.5(b)(1) (direction to apply offense level from another guideline includes specific offense characteristics); see also U.S.S.G. § 1B1.2(c) (allowing additional offense conduct stipulated to in a plea agreement to be treated "as if the defendant had been convicted of additional count(s) charging those offense(s)"). The commentary to § 2E1.1 provides that, when looking to the underlying racketeering activity, each underlying offense should be treated "as if contained in a separate count of conviction." U.S.S.G. § 2E1.1, cmt. n.1. Thus, the adjustment applies when a defendant pleads guilty to a RICO conspiracy charge, including the predicate act of money laundering. See United States v. Melgarejo, 556 F. App'x 601, 602 (9th Cir. 2014) (holding that the fact that a defendant was not convicted of money laundering under § 1957 was not relevant to whether the enhancement in § 2S1.1(b)(2)(A) applied).

Furthermore, Petitioner cannot establish prejudice based on counsel's failure to object to the adjustment because this Court overruled the same objection to the application of § 2S1.1(b)(2)(B) by one of Petitioner's co-defendants. See (Crim. Case No. 3:12cr239-13, Doc. No. 996 at 66: PSR Addendum, Carrie Tyson; Doc. No. 1031: Statement of Reasons, Carrie Tyson). Therefore, Petitioner cannot establish that there is a reasonable probability that he would have received a more lenient sentence had his counsel maintained this objection at sentencing. See Royal, 188 F.3d at 249. In sum, Petitioner has shown neither deficient performance, nor prejudice, and this assertion of ineffective assistance of counsel is therefore without merit.

  **B.**  **Petitioner's Claim that he received ineffective assistance based on**

**speculation that he might have been able to provide substantial assistance, that the Government would have moved for a downward departure, and that the Court would have granted the motion and imposed a sentence lower than the downward variance that he received.**

Petitioner next argues that his attorney provided ineffective assistance by preventing him from providing substantial assistance to the Government. (Doc. No. 1 at 20-24). Petitioner contends that, although he originally refused to speak with an agent about the case, he later told his attorney that he wanted to cooperate with the Government. (Id. at 21). He contends that counsel never conveyed this to the U.S. Attorney's Office. (Id.). Petitioner cites a February 24, 2015, email from his attorney, which states that "I did speak with the Assistant US Attorney regarding your hearing—she was not interested in talking with you about anyone else involved." (Id. at 21; 31). He contends that this was untrue, given the Government's argument at sentencing that the Government believed that Petitioner had useful information to provide, but that he had elected not to provide that information to the Government. (Id. at 21; 23). Petitioner also asserts that he asked his attorney to arrange a meeting with another Assistant U.S. Attorney, who had expressed an interest in debriefing Petitioner after his guilty plea, but the meeting was never set up. (Id. at 24). Petitioner argues that counsel's actions deprived him of an "opportunity" to obtain a downward departure under U.S.S.G. § 5K1.1. (Id.).

Petitioner cannot show constitutionally deficient performance based on counsel's failure to obtain a debriefing with the Government. Cf. United States v. Abston, 401 F. App'x 357, 363 (10th Cir. 2010) (holding "[i]t cannot be said that counsel was constitutionally deficient for failing to obtain the government's agreement to move for a § 5K1.1 departure"). Petitioner's plea agreement provided that the Government was not required to seek his cooperation or

assistance. (Crim. Case No. 3:12-cr-239-GCM-DCK-4, Doc. No. 363 at ¶ 23). Any alleged indication by Petitioner of a willingness to cooperate simply came too late in the case. His guilty plea was made less than two weeks before trial. Furthermore, as indicated in counsel's February 24th email, counsel did, in fact, reach out to the U.S. Attorney's Office about providing information but, given the late date, he was told this would not be needed. See (Doc. No. 1 at 31 (Feb. 24, 2015, email)).

In light of Petitioner's repeated contentions that he was misled into the offense and that he had not had "the chance to explain why I thought the transaction was lawful," id. at 32 (Mar. 3, 2015 email), counsel was not deficient for not setting up an opportunity for Petitioner to discuss the case in which there was the potential for him to lose credit for acceptance of responsibility. See Strickland, 466 U.S. at 689-91 (determining that courts should not second-guess strategic decisions of counsel). Finally, counsel effectively used Petitioner's failure to meet with the Government as a favorable factor in obtaining a downward variance at sentencing. See (Crim. Case No. 3:12-cr-239-GCM-DCK-4, Doc. No. 977 at 12; 16-17); United States v. Cronic, 466 U.S. 648, 657 n.21 (1984) ("If counsel is a reasonably effective advocate, he meets constitutional standards irrespective of his client's evaluation of his performance."). Accordingly, Petitioner has not shown that counsel's performance was deficient. See Strickland, 466 U.S. at 687-88.

Petitioner also cannot establish prejudice because he has not shown that he would have received a lower sentence had he met with the Government. See Royal, 188 F.3d at 249. Petitioner's claim is based entirely on speculation. He makes no effort to show what useful information he could have provided that would have resulted in a motion for downward departure by the Government. See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013)

11

(holding it was proper to dismiss § 2255 claims based on vague and conclusory allegations), cert. denied, 135 S. Ct. 47 (2014). Given the late timing of Petitioner's plea, as well as his assertion that he was only involved in two transactions, it is unlikely that any cooperation he provided would have been substantial. Additionally, "the Government [has] a power, not a duty, to file a motion when a defendant has substantially assisted" the Government. Wade v. United States, 504 U.S. 181, 185 (1992); see United States v. Snow, 234 F.3d 187, 190 (4th Cir. 2000) (stating that the Government retains the discretion to evaluate a defendant's assistance and to decide whether to seek a downward departure under U.S.S.G. § 5K1.1). In light of the Government's sole discretion to determine whether to make the motion, and this Court's discretion in determining whether to grant it, Petitioner has not shown a reasonable probability that he would have obtained a lower sentence had he met with the Government. Finally, because this Court considered and credited Petitioner's argument regarding cooperation and sentencing disparities at sentencing when it awarded a downward variance, he cannot meet his burden to show that there is a reasonable probability that he would have received a lower sentence but for counsel's conduct. See Royal, 188 F.3d at 249. In sum, Petitioner has shown neither deficient performance, nor prejudice, and this assertion of ineffective assistance of counsel is therefore without merit.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: December 2, 2015

Graham C. Mullen
United States District Judge